UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RODERICK HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:24-cv-00153-JHE |
| ) | |
| STANDARD GUARANTY INSURANCE ) | |
| COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Proceeding *pro se*, Plaintiff Roderick Harris ("Mr. Harris") brings claims on behalf of the Estate of Martha C. Harris [2] against Defendant Standard Guaranty Insurance Company ("Standard"), alleging "breach of contract, negligence, bad faith, conversion, conspiracy, fraud, and corruption." (Doc. 1).[3]  Standard has moved for summary judgment.  (Doc. 42).  Mr. Harris has filed a response in opposition (doc. 46), along with a motion to "stay, rescind, or void" the undersigned's previous orders (doc. 48).  Standard has filed a reply.  (Doc. 55).  For the reasons

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 21).

[2] Mr. Harris is the administrator of the Estate.  (*See* doc. 1).  Even though the claims raised in this case are the Estate's and not Mr. Harris's, this memorandum opinion does not generally distinguish between the two.

[3] As discussed further below, Mr. Harris also sued Defendants Crawford & Company ("Crawford"), and Wells Fargo Bank, N.A. ("Wells Fargo").  Defendants Crawford moved to dismiss Mr. Harris's complaint (doc. 7), and Wells Fargo moved for summary judgment (doc. 28).  On March 11, 2025, the undersigned granted both motions.  (Doc. 41).

discussed below, Standard's motion for summary judgment is **GRANTED**, and Mr. Harris's motion is **DENIED**.[4]

## I. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*,

---

[4] Mr. Harris has moved for a hearing on Standard's motion. (Doc. 49). The undersigned has considered Mr. Harris's arguments and finds a hearing is unnecessary. Therefore, that motion is **DENIED**.

2

283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Facts and Procedural History[5]

The undersigned set out the facts and procedural history of this case in the memorandum opinion dismissing Mr. Harris's claims against Crawford and Wells Fargo:

> According to the complaint, "[t]his is the third filing of this lawsuit." (Doc. 1 at 6). Mr. Harris points to the following "unresolved lawsuits": *Harris v. Standard Guaranty Ins.*, Case No. 2:20-cv-00335-SLB (N.D. Ala.) ("*Harris I*"); and *Estate of Martha C. Harris v. Wells Fargo Bank, N.A. et al.*, Case No. 2:23-cv-00173-AMM (N.D. Ala.) ("*Harris II*"). (*Id.*). Mr. Harris includes no facts in his complaint but states that Defendants are liable for "breach of contract, negligence, bad faith, conversion, conspiracy, fraud, and corruption." (*Id.*). Mr. Harris also takes issue with "a Federal Court Mediator" who "engaged in corruption and conspired with the Defendants by issuing a void order which violated the Plaintiff's Constitutional and Civil rights." (*Id.*).
>
> Piecing the facts together from Plaintiff's filings and the dockets in Mr. Harris's previous federal cases, the following procedural history has led up to this point.

---

[5] The undersigned considered the facts and procedural history below in the context of resolving Crawford's motion to dismiss and Wells Fargo's motion for summary judgment. (*See* doc. 41). Although Standard has submitted its own versions of the evidence, the undersigned will quote from the previous opinion and its citations to Wells Fargo's evidence to the extent that the evidence is identical. The undersigned also continues to take judicial notice of the records in Mr. Harris's previous cases, which are central to his claims here. (*See id.* at 6 n.5).

### A. *Harris I*

Mr. Harris is the Administrator of the Estate of Martha C. Harris. (*See* doc. 1). In that capacity, but proceeding *pro se*, Mr. Harris brought claims against Wells Fargo, Crawford, and Standard on February 6, 2020, in the Circuit Court of Jefferson County, Alabama.[6] (Doc. 30-1); *Harris I*, doc. 1-1. Mr. Harris alleged the defendants "are engaged in negligence, bad faith practices, fraud, and breach of contract" and that the defendants "are working together to deprive the Estate of insurance proceeds; and to unlawfully take possession of property the Estate owns and has an interest in." (Doc. 30-1 at 2).

Specifically, the complaint stated that Ms. Harris died from injuries she suffered in an accidental house fire at 417 Kim Drive (the "Property") in February 2018. (*Id.* at 2). In June 2018, Standard, which provided lenders insurance procured by Wells Fargo and paid by Ms. Harris, sent an adjuster from Crawford to appraise the damage to the Property. (*Id.* at 3–4). Mr. Harris alleged that the adjuster submitted a fraudulent report to Standard; based on that report, Standard issued a check compensating Mr. Harris for only a fraction of the damage to the Property. (*Id.* at 3). Despite Mr. Harris's efforts, neither Standard nor Wells Fargo would work with Mr. Harris to resolve that issue. (*Id.*). The issues ultimately resulted in Wells Fargo auctioning the Property. (*Id.* at 3–4). Through the state action, Mr. Harris attempted to recover the remainder of the insurance proceeds in addition to other damages. (*Id.* at 4).

On March 12, 2020, Standard removed the state action to this court. *Harris I*, doc. 1. The case was eventually assigned to United States District Judge Anna M. Manasco.[7] *Id.*, doc. 29. After some motion practice, Judge Manasco ordered the case to mediation with Senior United States District Judge Sharon L. Blackburn on July 27, 2020. *Id.*, doc. 54. As part of the mediation process, Judge Blackburn appointed *pro bono* counsel for Mr. Harris. *Id.*, doc. 55. Attorney Mickey Jansen Voss entered a notice of appearance for Mr. Harris on August 19, 2020. *Id.*, doc. 56. With Mr. Harris now represented by Attorney Voss, the parties mediated the

---

[6] The complaint in state court originally named "Wells Fargo Mortgage Company" as a defendant. (*See* doc. 30-1). When Wells Fargo eventually appeared after the case was removed to federal court, it did so as "Wells Fargo Bank, N.A." (i.e., the same entity named in this case). *See Harris I*, doc. 23.

[7] The case was originally assigned to United States Magistrate Judge John E. Ott. *See Harris I*, doc. 5. The parties did not unanimously consent to magistrate judge jurisdiction, so on May 5, 2020, the case was reassigned to United States District Judge Abdul K. Kallon. *Id.*, doc. 18. The case was reassigned to Judge Manasco on June 3, 2020. *Id.*, doc. 29. Although Mr. Harris states this was done "for no apparent reason," the reassignment was presumably as part of establishing Judge Manasco's initial docket; she received her judicial commission on May 27, 2020.

case on September 23, 2020. *Id.*, doc. 57. The case settled at mediation, and on September 28, 2020, Judge Manasco reassigned the case to Judge Blackburn "for the conclusion of the proceedings." *Id.*, doc. 67.

On October 30, 2020, Standard moved to enforce the settlement agreement. (Doc. 30-4); *Harris I*, doc. 67. In support, it noted that the settlement had been confirmed on the record with a court reporter, including Mr. Harris's agreement with the settlement's terms. (*Id.* at 3). However, it contended that Mr. Harris had informed Attorney Voss that Mr. Harris no longer intended to go through with the settlement and that Attorney Voss intended to withdraw as counsel. (*Id.* at 3–4). Mr. Harris responded, attempting to repudiate the settlement for a variety of reasons: Mr. Harris's desire to sue other parties, the defendants' alleged failure to honor the agreement by timely depositing money, and Mr. Harris's dissatisfaction with the amount of the settlement. *Harris I*, doc. 73.

Following a hearing, Judge Blackburn entered a memorandum opinion and an order granting the motion to enforce the settlement. (Docs. 30-5 & 30-6); *Harris I*, docs. 77 & 78. By this point, Attorney Voss had withdrawn and Mr. Harris was again proceeding *pro se*. (Doc. 30-5 at 5). In the memorandum opinion, Judge Blackburn highlighted the following exchange from the conclusion of mediation:

> THE COURT: All right. Anything else that you would like to put on the record? Mr. Harris, is there anything you would like to put on the record? Are the terms as stated your understanding of the settlement in this case?
>
> MR. HARRIS: Yes.
>
> THE COURT: And, obviously, after all of this has been accomplished and the settlement agreements have been signed and checks delivered, Mr. Harris, you will file—need to file a motion to dismiss this case and all claims with prejudice. And what that means is you can't ever bring any claims related to this matter again in any form, in any other court. And one thing I think—I'm not sure we said it—this claim encompassed—I mean this settlement encompasses any claims that might relate to the vehicles and the other equipment that was on your property that was picked up by—I forget the name of the company—Precise or—by a towing company and sold. This settlement encompasses any claims you might have for conversion or anything related to that, to those items, any other vehicles, anything. Do you understand that?

5

>MR. HARRIS: Yes, ma'am.
>
>[ . . . ]
>
>MR. MANLEY [attorney for Defendant Wells Fargo Companies]:
>
>>So Mr. Voss just pointed out that Mr. Harris is not a party to the lawsuit. He's—the estate is the party, and he's brought the lawsuit on behalf of the estate as the representative of the estate. And my point was: He would need to sign the settlement agreement, both on behalf of the estate and on behalf of himself due to the removal of the equipment from the property and resolving all those claims.
>
>MR. VOSS: And in fairness to the defendants, I wanted to bring that up and make that point abundantly clear that he understands that he is releasing his individual claims. You understand that, right?
>
>MR. HARRIS: Yes.
>
>MR. VOSS: And you are releasing—
>
>THE COURT: And Mr. Harris said yes. I'm not sure if you could hear that.
>
>>Go ahead.
>
>MR. VOSS: And you are releasing all of the claims that the estate has?
>
>MR. HARRIS: Yes.

(*Id.* at 4–5) (citing *Harris I*, doc. 74 at 6–9).

Based on her presence at the mediation and the evidence taken at the hearing on the motion to enforce, Judge Blackburn found that "the bare bones of everything in the proposed confidential settlement agreement and release—with the exception of an indemnification provision—had been discussed on the record at mediation" and

6

that Mr. Harris had "clearly understood" those terms—including that he was waiving all future claims. (Doc. 30-5 at 6–8). Judge Blackburn also found Mr. Harris's contention that the defendants breached the settlement agreement by failing to timely pay funds was meritless. (*Id.* at 9). Accordingly, Judge Blackburn dismissed the case with prejudice on February 12, 2021.[8] (*Id.* at 10; doc. 30-6).

Mr. Harris did not appeal that dismissal or any other order in *Harris I*.

### B. Harris II[9]

On February 10, 2023, Mr. Harris filed *Harris II* on behalf of the Estate, naming as defendants the same three defendants from *Harris I*: Standard, Crawford, and Wells Fargo. (Doc. 30-10); *Harris II*, doc. 1. Mr. Harris asserted the same general causes of action from *Harris I*: breach of contract, negligence, bad faith, conspiracy, and fraud. (Doc. 30-10 at 8). Specifically, Mr. Harris asserted that the defendants had failed to perform on the settlement agreement and that he "has been forced to file this lawsuit in an attempt to persuade Defendants to honor their contract agreement and to secure the return of all property and compensation." (*Id.*). Mr. Harris also "request[ed] this case be brought to the attention of the Chief Judge of this court, so it may be examined for possible criminal law violations and corruption by Federal Court Officers/Employees and Private Legal Professionals/Officers and to determine if this case should be referred to the U.S. Attorney's Office for investigation." (*Id.*).

---

[8] Judge Blackburn also ordered additional relief. Specifically, she provided directions for paying the monetary component of the settlement, ordered Wells Fargo to quitclaim the Property to the Estate, and provided for the disposition of two vehicles. (Doc. 30-5 at 10). Wells Fargo has provided the Declaration of Reid S. Manley in support of its motion for summary judgment, supporting that the quitclaim deed was executed on April 27, 2021, and recorded on May 5, 2021, and that the vehicles were ultimately towed to the Property. (Doc. 30-3). It appears from the *Harris I* docket that Mr. Harris failed to direct the defendants as to where the monetary component should be deposited, so the defendants deposited it into the court's registry. *Harris I*, docs. 79, 80, 81 & 82. The undersigned has confirmed with the Clerk of Court's office that $109,000.00 plus accrued interest remains in the court's registry—presumably waiting for Mr. Harris to claim it.

[9] Between the dismissal of *Harris I* and the filing of *Harris II*, Mr. Harris filed a lawsuit in the Circuit Court of Jefferson County, Alabama: *Roderick Harris v. Perfect Choice Towing*, Case No. 01-cv-2022–901954 (Jefferson County Cir. Ct. July 5, 2022). Wells Fargo has attached several documents from the state court docket to its motion for summary judgment. In that case, Mr. Harris sued Perfect Choice Towing ("Perfect Choice"), Baty Contracting, Inc., Brookstone Mgt., and Wells Fargo, raising conversion claims. (*See* doc. 30-7). The ultimate outcome of that case is not clear from the record in this case, but the state court granted summary judgment in favor of Wells Fargo and Perfect Choice on October 24, 2022. (Doc. 30-8).

> Standard moved to dismiss Mr. Harris's claims, *Harris II*, doc. 9, and Crawford and Wells Fargo both moved for summary judgment, *id.*, docs. 11 & 18. Each defendant contended that it had performed its obligations under the settlement agreement in *Harris I* and that the settlement agreement now barred Mr. Harris from relitigating the claims he previously raised.
>
> After converting Standard's motion to dismiss to a motion for summary judgment, *see id.* doc. 25, Judge Manasco determined that the defendants had complied with the terms of the settlement agreement. Specifically, Judge Manasco found that "[a]ll defendants have provided evidence that the settlement agreement is enforceable . . . that Mr. Harris and the Estate released the defendants from all possible claims related to the matter . . . and that the defendants complied with the terms of the settlement agreement."[10] (Doc. 30-11 at 8). By contrast, Mr. Harris provided no evidence to support that he had not received compensation from the settlement agreement. (*Id.* at 8).
>
> Rather than dispute that the defendants had performed under the settlement agreement, Mr. Harris challenged the agreement's validity on the basis that the settlement agreement "is unsigned, that it is unconscionable, that it violates various provisions of the Alabama Code, and that the mediation was improper." (*Id.* at 8-9). Judge Manasco found that Mr. Harris's failure to appeal Judge Blackburn's order granting the motion to enforce the settlement agreement barred Mr. Harris from challenging the settlement process or the agreement. (*Id.* at 9). And even if they were properly raised in *Harris II*, Judge Manasco found Mr. Harris's arguments meritless. (*Id.* at 9-10). Accordingly, she granted summary judgment in favor of all three defendants. (*Id.* at 10-11).

(Doc. 41 at 6-12) (footnotes in original).

### III. Analysis

As discussed above, Wells Fargo has already been granted summary judgment on Mr. Harris's claims against it. Specifically, the undersigned determined that *res judicata* bars Mr. Harris's claims. The undersigned stated as follows:

> Among other things, Wells Fargo contends Mr. Harris's claims are barred by the doctrine of *res judicata*. (Doc. 29 at 17-19). *Res judicata*, or claim preclusion, "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

---

[10] Judge Manasco determined that, notwithstanding the fact that the Estate was the only plaintiff named in the complaint, Mr. Harris asserted claims on his own behalf. (Doc. 30-11 at 2–3, n.1). Therefore, she treated both the Estate and Mr. Harris as plaintiffs. (*Id.*).

The doctrine promotes the finality of judgments by preventing a plaintiff from "relitigating [claims extinguished in the judgment] against the same defendant." *Akanthos Cap. Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269, 1271 (11th Cir. 2013).

"When determining whether claim preclusion is appropriate, federal courts employ the law of the state in which they sit." *Burr & Forman v. Blair*, 470 F.3d 1019, 1030 (11th Cir. 2006). "Under Alabama law, the essential elements of res judicata are: (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. If all these elements are met, any claim that was or could have been adjudicated in the previous action is precluded." *Id*. (cleaned up).[11]

Mr. Harris makes no effort in his response to contest any of the four *res judicata* elements. Instead, his entire response is focused on what he contends are procedural improprieties in the previous proceedings. For example, he states that *res judicata* is irrelevant because "this lawsuit was filed to address constitutional and civil violations and to resolve the dispute related to [*Harris I*]." (Doc. 33 at 4). Mr. Harris also objects to Judge Manasco's opinion because she "demonstrated bias towards the Plaintiff" and contends that Judge Manasco's actions violated his constitutional rights. (*Id.* at 5, 15-16). But Mr. Harris may not appeal Judge Blackburn's or Manasco's decisions or actions by filing a new civil case.[12] *See* FED. R. APP. P. 3(a)(1) ("An appeal permitted by law as of right from a district court to a court of appeals may be taken **only** by filing a notice of appeal with the district clerk within the time allowed by Rule 4") (emphasis added).

It is clear that the judgments in *Harris I* and *Harris II* bar Mr. Harris's claims. First, notwithstanding Mr. Harris's statement that the cases are "unresolved" (doc. 1 at

---

[11] The federal common law *res judicata* elements are virtually identical to those under Alabama law. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999)) ("[A] claim is precluded by prior litigation if: '(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.'").

[12] The undersigned notes that *Harris II* is currently on appeal in the Eleventh Circuit. *See Martha C. Harris v. Wells Fargo Bank, N.A.*, Case No. 24–11138 (11th Cir.). Even if it were appropriate for Mr. Harris to raise a challenge to the judgment in *Harris II* through a separate civil action, this court has no jurisdiction over that judgment given Mr. Harris's appeal. *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001) ("The filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal."). For the same reason, this court has no jurisdiction over Mr. Harris's complaints about the way Judge Manasco handled *Harris II*.

6), there is no question that Judges Blackburn and Manasco rendered final judgments on the merits when they dismissed Mr. Harris's claims with prejudice (*see* docs. 30-6 & 30-12). *See Smith v. Union Bank & Trust Co.*, 653 So. 2d 933, 935 (Ala. 1995); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001). Nor is there a question that the United States District Court for the Northern District of Alabama is a court of competent jurisdiction. And the parties in this action are identical to those in *Harris I* and *Harris II*: Mr. Harris (as the Estate's administrator), Standard, Crawford, and Wells Fargo. The only remaining question is whether the causes of action are the same.

When determining whether a cause of action is the same for *res judicata* purposes, the question is not whether the claims are identical. *See Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928-29 (Ala. 2000)). "*Res judicata* applies not only to the *exact legal theories* advanced in the prior case, but to *all legal theories and claims* arising out of the same nucleus of operative facts." *Id.* (quoting *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir. 1993)) (emphasis added in *Lanier*).

Mr. Harris's references in the complaint to *Harris I* and *Harris II* along with his acknowledgement that this is the "third filing of this lawsuit" demonstrates that the substance of this lawsuit is the same as the claims he raised in the previous two actions. A review of Mr. Harris's response to the motion for summary judgment supports that reading. Again, the only actual claims in the complaint are for "breach of contract, negligence, bad faith, conversion, conspiracy, fraud, and corruption." (Doc. 1 at 6). Mr. Harris states that: (1) his negligence and breach of contract claims are founded on the way Defendants handled the resolution of the fire damage claim (doc. 33 at 7–8); (2) his fraud claim relates to the allegedly false damage report (*id.* at 8); (3) his bad faith claim is related to Defendants' withholding of insurance funds (*id.* at 8–9); and (4) Defendants conspired together and were unjustly enriched by their activities (*id.* at 9). In other words, Mr. Harris reasserts the same claims he raised in *Harris I*.[13] As noted above, Judge Blackburn dismissed those

---

[13] A potential wrinkle here as to the judgment in *Harris I* is that it was predicated on a settlement agreement. "Where the parties consent to . . . dismissal based on a settlement agreement . . . the principles of res judicata apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.,* 371 F.3d 1285, 1288 (11th Cir. 2004). This is because "[a] judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it." *Id.* "In determining the res judicata effect of an order of dismissal based upon a settlement agreement" a court should "attempt to effectuate the parties' intent . . . [t]he best evidence of [which is] the settlement agreement itself." *Id.* at 1289.

Mr. Harris, of course, denies that the settlement agreement binds him. To the extent that it does, though, the undersigned notes that the agreement is under seal in *Harris I*. *Harris I*, doc. 71. That said, Mr. Harris has attached a copy of a version of the agreement as Exhibit B to his response

claims with prejudice in *Harris I*. (Doc. 30-6). And Judge Manasco determined in *Harris II* that Mr. Harris released those claims through a binding settlement agreement. (*See* doc. 30-11 at 8, 10-11). Therefore, whether through the judgment in *Harris I* or the judgment in *Harris II*, *res judicata* bars the claims for breach of contract, negligence, bad faith, conversion, conspiracy, and fraud.

To the extent that Mr. Harris's reference to corruption concerns the conduct of the mediation, the settlement agreement, or the settlement agreement's enforceability, Judge Manasco disposed of any such claims as well in *Harris II*.[14] As stated above, Judge Manasco found that Mr. Harris's failure to appeal Judge Blackburn's order on the motion to enforce the settlement barred him from raising any challenges to "the settlement process or the settlement agreement." (Doc. 30-11 at 9). And even if Mr. Harris could raise such a challenge, Judge Manasco found it would be meritless:

> Assuming *arguendo* that Mr. Harris could challenge the validity or enforceability of the settlement agreement, that challenge would fail. Under Alabama law, courts construe settlement agreements as a contract, *Jones v. Bullington*, 401 So. 2d 740, 741 (Ala. 1981), and "[i]t is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." *SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co.*, 644 So. 2d 892, 895 (Ala. 1994).
>
> Judge Blackburn correctly reasoned that Mr. Harris's actions manifested his and the Estate's assent to the terms of the settlement agreement. "[T]he court . . . explained that Mr. Harris was waiving all claims related to this matter—including claims related to any

---

to Crawford's motion to dismiss. (Doc. 16-2). The undersigned has reviewed both documents. Mr. Harris's public version of the document contains a release identical to the release in the final sealed settlement agreement—the document that Judges Blackburn and Manasco found binding. The settlement agreement releases "any and all past, present, or future Claims, whatsoever, whether such Claims are known or unknown, foreseen or unforeseen, developed or undeveloped, discoverable or presently incapable of being discovered, relating in any way to any act or omission that occurred or should have occurred on or before the Date of this Release, including, but not limited to: (a) all Claims asserted in the Lawsuit; (b) all Claims that could have been asserted in the Lawsuit or in any other lawsuit, complaint in equity, or state or federal agency or administrative proceeding; (c) all Claims under the Certificate, and (d) all Claims arising out of any actual or alleged contractual relationship, express or implied, between Plaintiff and any of the Defendants." (*Id.* at 5–6). In other words, the release in the settlement agreement is significantly broader than the claims in the *Harris I* complaint and necessarily encompasses those claims.

[14] In addition to the claims asserted by Mr. Harris for the Estate, the judgment in *Harris II* bars any claims that Mr. Harris arguably asserts on his own behalf. (*See* doc. 30-11 at 2–3, n.1).

11

> vehicles or other property—and Mr. Harris stated that he understood." Doc. 11-2 at 9. And "Mr. Harris confirmed on the record that he understood that he was releasing all of his claims and all claims on behalf of the estate." *Id.* These actions—namely, the multiple confirmations on the record that Mr. Harris understood and agreed to the terms of the settlement—demonstrated objective assent to its terms.
>
> In the light of those objective manifestations of assent, it is irrelevant that Mr. Harris alleges that he did not sign the settlement agreement. "Unless required by a statute to be in writing, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon." *Lanier Worldwide, Inc. v. Clouse*, 875 So. 2d 292, 296 (Ala. 2003). None of the statutes that Mr. Harris or the Estate cites command a different result. And to the extent that the requirement that conveyances of land be in writing applies to Wells Fargo's quitclaiming of property, Ala. Code § 35-4-20, that conveyance is in writing and is signed by the conveying party. *See* Doc. 18-4.
>
> Mr. Harris and the Estate further contend that the mediation was improper and that there should not have been a record made of the mediation proceedings. *See* Doc. 14 at 3. No record was made of the substance of the negotiations during the mediation proceedings. The court put the terms of the settlement and Mr. Harris and the Estate's assent to those terms on the record after the mediation proceedings had concluded.
>
> Mr. Harris and the Estate agreed to the settlement agreement, which released and barred future claims against these defendants arising from the factual basis for the first lawsuit. The defendants have provided uncontroverted evidence that this settlement agreement is enforceable, and that they complied with its terms. Mr. Harris and the Estate have not provided any evidence to the contrary.

(Doc. 30-11 at 8-10).

While Mr. Harris may not agree with the decisions by Judges Blackburn and Manasco, there is no question that they meet all four *res judicata* elements as to the claims Mr. Harris raises in this action.[15] He may not relitigate them here. Accordingly, Mr. Harris's claims against Wells Fargo are due to be dismissed.

---

[15] To the extent that Mr. Harris alleges that Judges Blackburn and Manasco acted improperly, he notably did not name them as defendants in this case and thus any such allegations appear to go only to the validity of the settlement agreement. Nor could Mr. Harris bring claims

(Doc. 41 at 16-21) (footnotes in original).

Standard has now moved for summary judgment on exactly the same basis that Wells Fargo did.[16] (Doc. 43 at 15-18). In a footnote in the previous opinion, the undersigned stated that "[t]he same reasoning that supports . . . summary judgment as to Mr. Harris's claims against Wells Fargo appears to apply to Mr. Harris's claims against Standard. However, despite its contention that it intended to do so (*see* doc. 22 at 4), Standard has not moved for summary judgment or dismissal." (Doc. 41 at 13 n.11). Nothing Mr. Harris has submitted in opposition disturbs that assessment.[17]

---

against them for any of their judicial decisions for "compensatory and punitive damages" of $50 million, which is the only relief he seeks (*see* doc. 1 at 4, 6; doc. 33 at 16–17); judges are absolutely immune from suits for money damages when they have acted in their judicial capacity and without the "clear absence of all jurisdiction." *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)). In any case, Mr. Harris's allegations concerning judicial conduct are not attributable to Wells Fargo (or any of the other defendants in this case).

[16] Wells Fargo also moved for summary judgment on the grounds that it performed under the settlement agreement. (*See* doc. 29 at 13–17). The undersigned did not reach those arguments. Standard has raised essentially the same arguments (*see* doc. 43 at 11–14), which the undersigned again declines to address.

[17] Mr. Harris argues that he is unable to adequately respond to Standard's motion for summary judgment because the undersigned stayed discovery deadlines. (Doc. 46 at 3–4). Liberally construing Mr. Harris's response, this is similar to a motion under Federal Rule of Civil Procedure 56(d)(2). Under that Rule, a party may move for additional time to take discovery when a party "cannot present facts essential to justify its opposition" to a motion for summary judgment. FED. R. CIV. P. 56(d)(2). The Eleventh Circuit has explained that to obtain relief pursuant to Rule 56(d), a party must "set [] forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). It is not sufficient for the party seeking the delay to rely on vague assertions that additional discovery will produce needed, but unspecified, facts. *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989).

Mr. Harris has not specified any facts that would be learned through discovery that would preclude summary judgment. He simply states that there is "important information" to be discovered that "could affect the presentation and the outcome of this lawsuit." (Doc. 46 at 3–4). It is doubtful that *any* additional facts would be relevant here given that the basis for summary judgment is the relationship of this case to Mr. Harris's previous cases. Accordingly, any request by Mr. Harris for discovery is **DENIED**.

Mr. Harris's response lays out the same arguments he offered in response to Wells Fargo's motion for summary judgment: that the previous proceedings were improperly resolved and that the settlement agreement is void. (*See* doc. 46 at 5-11, 16-19). The undersigned has addressed this argument, including how it pertains to *res judicata*, in the blockquoted section above. Mr. Harris's sole reference to *res judicata* is to argue that "this lawsuit was filed to address constitutional and civil violations and to resolve the dispute related to 2:20-CV-335-AMM-SLB" and that "Defendants cannot produce admissible evidence to prove the dispute was legally resolved." (Doc. 26 at 8). To the extent that this attacks the final judgment *res judicata* element, the undersigned previously addressed this: "there is no question that Judges Blackburn and Manasco rendered final judgments on the merits when they dismissed Mr. Harris's claims with prejudice (*see* docs. 30-6 & 30-12)." (Doc. 41 at 17) (citing *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933, 935 (Ala. 1995); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001)). The evidence that there is a final judgment in those cases is the public record of the judges' orders.

Mr. Harris also argues in his response that this case should be stayed because there is "an active appeal . . . challenging the Defendants' assertion they executed a legally binding settlement agreement and they secured the protection of the res judicata rule . . . ." (Doc. 46 at 19). Mr. Harris contends that "the outcome of this appeal will directly affect the status of this lawsuit," and thus he argues that this court should "suspend proceedings until the appellate court issues a finding." (*Id.*). Mr. Harris echoes this in a standalone motion. (Doc. 48). This simply illustrates why *this* case is not the appropriate way for Mr. Harris to pursue his claims. If Mr. Harris is correct that he will prevail on appeal in *Harris II*, the case will be remanded; Mr. Harris will be free to

make all of the same arguments he is attempting to make here on remand in *Harris II*.[18] Accordingly, Mr. Harris's motion to stay is **DENIED**.[19]

### IV. Conclusion

For the reasons discussed above, Standard's motion for summary judgment (doc. 42) is **GRANTED**, and Mr. Harris's claims against Standard are also **DISMISSED WITH PREJUDICE**. Mr. Harris's motions to stay (doc. 48) and for a hearing (doc. 49) are **DENIED**. A separate order will be entered.[20]

---

[18] The undersigned notes that the Eleventh Circuit entered an opinion affirming the district court in *Harris II* on July 7, 2025, but the mandate has not yet issued. *See Harris v. Wells Fargo Bank N.A.*, No. 24-11138, 2025 WL 1860290 (11th Cir. July 7, 2025).

[19] To the extent that the motion requests reconsideration of the undersigned's order granting Crawford's motion to dismiss and Wells Fargo's motion for summary judgment, it is also due to be denied. Under Federal Rule of Civil Procedure 54(b), district courts have the discretion to reconsider interlocutory orders at any time before final judgment. *See Watkins v. Capital City Bank*, No. CV 310-087, 2012 WL 4372289, at *4 (S.D. Ga. Sept. 24, 2012). Although the text of Rule 54(b) does not specify a standard by which courts evaluate motions, courts in the Eleventh Circuit "have taken the position that a motion for reconsideration should only be granted if there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice." *Insured Deposits Conduit, LLC v. Index Powered Fin. Servs., LLC*, No. 07-22735-CIV, 2008 WL 5691349, at *2 (S.D. Fla. Mar. 14, 2008). Because reconsideration "is an extraordinary remedy to be employed sparingly," the movant "must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." *Burger King Corp v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369, 1370 (S.D. Fla. 2002). "A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented" before the original decision. *S.E.C. v. Mannion*, No. 1:10-cv-3374-WSD, 2013 WL 5999657, at *2 (N.D. Ga. Nov. 12, 2013). Mr. Harris's motion is a rehash of his arguments opposing summary judgment; it does not point to any change in controlling law, newly discovered evidence, or clear error.

[20] The undersigned notes that Mr. Harris attempted to appeal the order granting relief to Crawford and Wells Fargo. (Doc. 50). The Eleventh Circuit rejected Mr. Harris's appeal, concluding that it lacked jurisdiction because the order did not end the litigation on the merits. (*See* doc. 57). The accompanying order dismisses the action and thus ends the litigation on the merits as to all parties.

DONE this 16th day of July, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE